**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**M.A., by and through his conservators and Parents, A.S. and Z.A., and A.S. and Z.A., individually,**

*Plaintiffs*,

v.

**Memphis-Shelby County Schools,**

*Defendant*.

Case No. 2:26-cv-03238-BCL-tmp

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE STAY-PUT AND FOR PRELIMINARY INJUNCTION**

---

Before the Court is the Motion to Enforce Stay-Put and for Preliminary Injunction filed by Plaintiffs Mohammad Albanna ("M.A."), by and through his conservators and parents Ayesha Shah and Zakaria Albanna, and Ayesha Shah and Zakaria Albanna individually ("Plaintiffs"). Doc. 14. For the following reasons, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

**A.** Plaintiffs bring this action against Defendant Memphis-Shelby County Schools asserting violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*; and the ADA's anti-retaliation provision, 42 U.S.C. § 12203. Plaintiffs also seek to enforce the IDEA's stay-put provision, 20 U.S.C. § 1415(j). Doc. 13.

This action concerns M.A., who allegedly "is twenty, has autism, and has fewer than two school years of IDEA eligibility left." Doc. 14-1 at 2. Plaintiffs' filings are difficult to parse due to Plaintiffs' profligate use of haphazardly explained acronyms and jargon,[1] but the gist appears to be that M.A. has an Individualized Education Program (IEP) dating to October 30, 2024, requiring (1) applied behavior analysis ("ABA") methodology provided in two 60 minute sessions per week delivered by a Behavior Analyst, and (2) verbal behavior instructions, as well as a Behavior Intervention Plan (BIP) calling for training and oversight by Defendant's Board Certified Behavior Analyst," which during the relevant time was the Holland Center. Doc. 14-1 at 2; Doc.13-5.

According to Plaintiffs, Defendants have not lived up to these responsibilities. They claim that Defendant ceased providing training using the ABA methodology in October 2025, opting instead to provide two weekly hours of "Data Consultation" based on a new IEP. Doc. 14-1 at 2, 6-7. And they assert that Defendant is no longer using a BCBA, having allowed its relationship with the Holland Center to lapse. Plaintiffs allege that "the team … carried forward" this approach in an April 2026 BIP that was in place when the Plaintiff Parents "filed for due process"—which is a niche way of saying they initiated administrative proceedings. Plaintiffs seek to have "the ABA his IEP and BIP already require be designed, overseen, and supervised by a qualified BCBA, and delivered by school staff whom that BCBA trains, observes, and corrects." Doc. 14-1 at 2.

**B.** M.A.'s Parents filed their so-called due process complaint against Defendant on May 8, 2026. Tennessee Department of Education, Administrative Procedures Division Case No. 07.03-262423J. Following a two-day hearing, the Administrative Law Judge entered a Final Order

[1] As indicated here and below, Plaintiffs' briefing fails to connect their arguments to aspects of their requested relief, fails to make clear which arguments relate to which aspects of their requested relief, haphazardly uses jargon and acronyms without defining them when first used, and cites record materials in inconsistent and unorthodox ways that make it difficult for the Court to locate the materials. Plaintiffs are advised to take more care in briefing matters—particularly if and when they are requesting extraordinary relief.

for Defendant. Plaintiffs claim that the ALJ measured the Defendant's performance against the wrong IEP, using an October 3, 2025 draft rather than the October 21, 2025, IEP with its April 7, 2026 amendment. Doc. 14-1 at 3. Plaintiffs then filed this lawsuit on September 18, 2026. Doc. 1.

Plaintiffs filed the present Motion to Enforce Stay-Put and for Preliminary Injunction on October 28, 2026. Doc. 14. Plaintiffs assert that (1) "stay put" relief is mandated under any proceedings pursuant to 20 U.S.C. § 1415 and (2) a preliminary injunction is warranted based on their claims under Section 504, Title II, and 42 U.S.C. § 12203(b). Doc. 14. Defendant responds that (1) M.A. is receiving the benefit of his operative IEP from April 7, 2026, and BIP and (2) that Plaintiff has not shown a likelihood of success on the merits as required to support a preliminary injunction.[2] Doc. 18. Plaintiffs filed a Reply on November 5, 2026. Doc. 21.

## LEGAL ANALYSIS

### I. "Stay Put" relief is mandated for Plaintiffs, but Defendant has correctly defined the services that must be provided.

No one appears to dispute that under 20 U.S.C. § 1415(j), M.A. is entitled to "stay put" interim relief giving him the benefit of his IEP. The Parties even appear to agree that the April 7, 2026, IEP governs. Doc. 14-1 at 13; Doc. 21 at 5. The Parties do, however, disagree on what M.A.'s "then-current educational placement" required.

Plaintiffs insist, without citation, that the stay-put provision entitles M.A. to the following:

1. Maintain the IEP completed on October 21, 2025, as amended April 7, 2026;
2. Maintain the Behavior Intervention Plan adopted October 30, 2024 ("BIP");
3. Maintain the Holland Center Consultation Report and Procedures dated September 24–26, 2025, and the adopted data sheets incorporated into Mohammad's educational plan through the District's October 21, 2025 Prior Written Notice;

[2] Defendant also argued that it should receive an extension until November 12 to respond to the Motion. This request is now moot because that date has now come and gone without further response from Defendant. But, in any event, Defendant did not properly present its request to the Court by moving for an extension. Defendant may move to alter or lift the Order if there emerges new evidence or changed circumstances that could not have been presented before this Order.

4. Provide instruction using "ABA methodology, verbal behavior instructions, as represented in BIP to be used across all academic and nonacademic settings";
5. Provide two sixty-minute sessions per week of "Data Consultation," designated as Direct Special Education in the operative IEP, for the stated purpose of ensuring "consistency in implementing Holland Center procedures for goals and support for data collection and data analysis";
6. Provide initial and ongoing staff training by "MSCS' BCBA" as required by Section VIII of the BIP;
7. Conduct direct observation of Mohammad's program at least once per month during the academic school year, as required by Section VIII of the BIP; and
8. Implement the BIP and the Holland Center procedures incorporated into Mohammad's educational plan, including the prescribed prompting, reinforcement, error-correction, and prompt-fading procedures.

Doc 14 at 6-7. Defendant, in contrast, argues that M.A.'s operative April 7, 2026, IEP calls for the following services:

1. Functional Skills: provided by a special education teacher, 5 times per week for six hours per day, for a total of 30 hours;
2. Data Consultation: provided by a member of the behavior team, 2 times per week for 60 minutes, for a total of two hours;
3. Occupational Therapy: provided by an occupational therapist, six times per month for 30 minutes per session, for a total of 3 hours per month; and
4. Speech and Language Therapy: Speech Language Pathologist, 12 times per month for 30 minutes per session, for a total of 6 hours per month.

Doc. 18 at 12-13.

Plaintiffs do precious little to explain the difference and justify their position as compared to Defendant's. Defendant, at least, offers some explanation for the discrepancy: Defendant states that the "April 7, 2026 Amended IEP does not include BCBA services because those services were removed from M.A.'s IEP by agreement during his October 21, 2025 IEP meeting." Doc. 18 at 13. So far as the Court can tell from the Parties' submissions, Defendant has the better of the argument because the October 21, 2025 Prior Written Notice does reflect that the School District had by that time decided to use "consultation services with data collection and data analysis" in lieu of the BCBA approach now preferred by Plaintiffs and that "M.A.'s educational plan will be covered by the IEP as amended during today's meeting (10.21.25), his BIP, and his data binder which includes

his Holland Center Consultation Report and Procedures dated September 24-26, 2025 and data sheets during the October 3, 2025 IEP meeting." Doc. 13-1 at 2. Because the School District no longer agreed to and approved of the BCBA services as of the time of the due process complaint, those services need not be provided as part of stay put relief. *See N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611, 618 (6th Cir. 2014) (noting requirement of school district agreement); *J.L. through S.L.*, 2024 WL 3634456, at *9 ("current educational placement" refers to an "agreed-upon educational placement actually functioning" when plaintiffs filed their due process complaint).

That appears to resolve the entirety of the dispute between the Parties concerning the stay put motion; at least, Plaintiff's briefing identifies no other basis for dispute. Still, in the interest of attempted clarity, the Court **ORDERS** that, under the stay-put provision:

1. Defendant **SHALL** immediately and during the pendency of this action:

- Comply with the April 7, 2026 Amended IEP, including the amendments resulting from the October 21, 2025, PWN and meeting;
- Comply with the October 2024 BIP;
- Comply with the data binder which includes the Holland Center Consultation Report and Procedures dated September 24-25, 2026, and his data sheets adopted during the October 2, 2025 IEP meeting.
- This includes, but is not necessarily limited to, providing the following:
    - Functional Skills: provided by a special education teacher, 5 times per week for six hours per day, for a total of 30 hours;
    - Data Consultation: provided by a member of the behavior team, 2 times per week for 60 minutes, for a total of two hours;
    - Occupational Therapy: provided by an occupational therapist, six times per month for 30 minutes per session, for a total of 3 hours per month; and
    - Speech and Language Therapy: Speech Language Pathologist, 12 times per month for 30 minutes per session, for a total of 6 hours per month.

2. At least pursuant to the Stay-Put Order—but see below for the preliminary injunction analysis—Defendant **NEED NOT:**

    a. Provide instruction using "ABA methodology, verbal behavior instructions, … across all academic and nonacademic settings"; nor

    b. provide BCBA services.

3. Defendant **SHALL NOT** make any material change to this stay-put educational placement, absent agreement with Plaintiffs or other lawful authorization.

On this basis and to this extent, the Motion for Stay Put Relief is **GRANTED IN PART**.

## II. Plaintiffs have also shown entitlement to a preliminary injunction, although its issuance will be conditioned on Plaintiffs' posting of bond.

Recognizing that the stay-put argument might not result in all of the interim relief they seek, Plaintiffs also seek a preliminary injunction based on their claims under the Rehabilitation Act and the ADA. Specifically, Plaintiffs seek to "restore former direct BCBA service, renew the Holland Center contract, require a BCBA personally to deliver every consultation or observation, or impose new reporting duties" through a preliminary injunction. Doc 14-1 at 14.

### A. The Preliminary Injunction Factors

To grant preliminary injunctive relief, the Court must determine: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction [i.e., before the case can be adjudicated on its merits]; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014) (citing *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir.2014)). The factors are not rigid; the Court must "engage in a realistic appraisal of all the traditional factors weighed by a court of equity." *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir.1985).

**1.** The Parties' dispute turns on **likelihood of success on the merits**. In seeking a preliminary injunction, Plaintiffs invoke only their claims under the ADA and Rehabilitation Act (Doc. 14-1 at 14-15), and not the IDEA, and so the Court likewise focuses its analysis on the ADA and Rehabilitation Act claims.

In a single paragraph devoted to their retaliation claim, Plaintiffs cursorily blame a host of issues on "retaliation" for filing their Due Process Complaint: "BCBA oversight lapse, proposed deleting ABA and BIP despite contrary teacher observations, and refused to complete the annual IEP review without Plaintiffs' litigation counsel." Doc. 14-1 at 18. This argument fails to support Plaintiffs' request for injunctive relief because Plaintiffs in their briefs identify no evidence of causation—that Defendant has deprived M.A. of the services Plaintiffs seek to require by injunction in retaliation for Plaintiffs' filing of their Due Process complaint. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) (noting that a claim of retaliation requires a showing of causation). The most Plaintiffs offer are that Defendant declined to complete an annual IEP review without the presence of Plaintiffs' counsel and that a teacher did not attend IEP meetings—but neither fact demonstrates that retaliation somehow deprived M.A. of the services Plaintiffs seek to require, which appear to have already been taken away at the time of the alleged retaliation. Doc. 14-1 at 18.

Plaintiffs make a stronger showing on their failure-to-accommodate claim.[3] Docs. 14-1 at 15-16. To prevail under the ADA or Rehabilitation Act, "a plaintiff must establish that (1) he has a qualifying disability, (2) he is otherwise qualified for a program, and (3) he was excluded from

[3] Plaintiffs also briefly mention a claim of outright disability discrimination. Doc. 14-1 at 15. If Plaintiffs mean to invoke this theory as a freestanding basis for a preliminary injunction, they have forfeited the issue by failing to adequately present it. And, in any event, Plaintiffs have identified no evidence that Defendant has denied M.A. the services Plaintiffs seek because of his disability, in the sense of intentional discrimination. *See* Finley *v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) (Plaintiffs may satisfy that final element [causation] using two different theories: failure to reasonably accommodate and intentional discrimination.)

participation in, denied the benefits of, or subjected to discrimination under a program because of his disability."[4] *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024). No one disputes that M.A. has a disability—namely, autism. And no one disputes that M.A. is "otherwise qualified for the program"—namely, public special education at Germantown High School. *See Kaltenberger v. Ohio Coll. of Podiatric Med.,* 162 F.3d 432, 435 (6th Cir. 1998) ("A handicapped or disabled person is 'otherwise qualified' to participate in a program if she can meet its necessary requirements with reasonable accommodation."). So, the question here is whether M.A. is "excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024).

A plaintiff can make that showing by proving that: (A) "the defendant reasonably could have accommodated his disability but refused to do so"; and (B) "the failure to accommodate impeded his ability to participate in or benefit from a program or service." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024). "Because failing to grant a reasonable accommodation is itself direct evidence of discrimination, plaintiffs who meet this burden need not provide additional evidence of discriminatory intent." *Id.* Here again, we have an issue that no Party disputes: Defendant reasonably *could* provide the services Plaintiffs seek for M.A.—indeed, Defendant apparently did offer these services, or some of them, at an earlier point.

And so, the issue narrows still further: Have Plaintiffs shown (or, more accurately in this posture, shown that they are likely to succeed in showing) that the failure to offer the services they seek to impose by preliminary injunction has impeded M.A.'s ability to participate in public education? Another way of asking the question is whether, without the sought-after services, M.A.

[4] The ADA requires a showing of but-for causation, whereas the Rehabilitation Act requires a plaintiff to prove "sole[ ]" causation. *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024). No one suggests that distinction matters here.

has "meaningful access" to the education that Defendant offers. *See Alexander v. Choate*, 469 U.S. 287, 302 (1985).

At this preliminary stage, Plaintiffs have sufficiently made that showing with respect to the need for ABA services. Plaintiffs have produced the declaration of a medical doctor—who has treated M.A.—stating that ABA is a key feature of M.A.'s education that enables him to learn. Doc. 14-4 at 3. Plaintiffs have also submitted similar evidence from a Behavior Specialist and a psychologist. *See* Doc. 14-3at 5 ("ABA does not replace [M.A.'s] education; it is the means by which he accesses it."); Doc. 14-5 at 1, 3. And, while Plaintiffs have not highlighted it for the Court, the Court notes that they have submitted evidence that BCBA oversight is necessary for the ABA that is in turn necessary for M.A. to access the public education provided by Defendant. *See* Doc. 14-3 at 7-9 (behavior specialist so declaring).

In response, Defendant argues that it has complied sufficiently well with M.A.'s IEP, but in focusing on its own compliance Defendant misses the point—which is whether the failure to provide the sought-after accommodations precludes M.A. from accessing his public education.[5] Doc. 18 at 9-12. And, to the extent Defendant does frame the issue in terms of the impact of its actions and inactions on M.A., Defendant asserts meekly—and without citation—that M.A. "has made meaningful progress" in developing vocational and other basic skills, without directly addressing—with record support—whether M.A. is able to access the education it offers without the sought-after services. Plaintiff's evidence thus stands alone, without counterevidence.

For these reasons, Plaintiff has at this stage shown a likelihood of success on the merits capable of supporting a preliminary injunction. At the very least, Plaintiffs have shown "questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for

[5] It appears that Defendant tailored its response entirely to the IDEA claim, which would explain why its analysis does not really address the issues raised by Plaintiffs' ADA and Rehabilitation Act claims.

litigation and thus for more deliberate investigation" in the circumstances of this case, where the other factors strongly support a preliminary injunction. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). Either way, this factor supports interim relief.

**2.** Plaintiffs have likewise made an adequate showing that M.A. is likely to suffer **irreparable harm** during the pendency of this litigation in the absence of a preliminary injunction. Harm is irreparable if money cannot fully remedy it. *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992)). M.A. has very few remaining years of public schooling—a period of time in which the window on prefrontal cortex development is closing and which would likely be substantially consumed by litigation in the usual course. And Plaintiffs have submitted declarations from a treating physician and a behavioral specialist explaining that if M.A. does not receive ABA with BCBA oversight during that period, he will have forever missed the opportunity to develop through education skills needed for adult life. Doc. 14-4 (treating physician: "If [M.A.] does not receive ABA training during these years," he likely will never develop the skills that he could otherwise learn through education.); Doc. 14-3 at 12 (behavioral specialist: "The harm is a loss of skills and learning opportunities that compounds over time and cannot be recovered simply by providing more services later."). These declarations make a compelling case of irreparable harm and Defendant has identified no contrary evidence, relying only on the aforementioned meek, in-brief assertions that M.A. is making some progress.

**3, 4.** Issuance of an injunction would **not cause harm to others nor to the public interest.** No one has identified any potential harm to others that might be caused by issuance of a preliminary injunction here. One might make the case that the sought-after services cost money so that requiring Defendant to provide them would harm the public fisc, but that is a concern best

considered under the public interest factor. Turning to that factor, there is generally no harm to the public interest in requiring a public entity like Defendant to adhere to the law, and Defendant has identified no special considerations that would warrant deviating from that general rule here. And while (as noted) an injunction requiring additional services for M.A. might harm the public fisc if Plaintiff's claims later fail on the merits, that is a concern that can be addressed through provision of a bond.

* * *

In sum, the injunction factors support a preliminary injunction here, under which Defendant must:

a. Provide instruction using "ABA methodology, verbal behavior instructions, … across all academic and nonacademic settings"; and

b. Do so with oversight from a qualified BCBA.[6]

Doc. 14-1 at 16. The Court will elaborate on the specific requirements of the injunction below, in the conclusion. As discussed in the next section, however, Defendant need only do the things so ordered if Plaintiffs post an adequate bond.

**B. Plaintiffs must post bond in order to receive a preliminary injunction.**

Rule 65(c) of the Federal Rules of Civil Procedure provides that a "court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been enjoined or restrained." Despite that clear mandate, many courts (including the Sixth Circuit) have dispensed

[6] Plaintiffs also seek an order preventing Defendant from insisting on the presence of Plaintiffs' counsel at IEP meetings. Plaintiffs have offered no explanation for how a counsel attendance requirement, if it exists, is preventing M.A. from participating in public education services. Nor have they offered any explanation for how such a requirement threatens M.A. with irreparable injury. This unexplained and undeveloped request does not warrant preliminary injunction relief.

with the security requirement in some circumstances. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). The Court accepts that binding precedent, as it must.

Still, Plaintiffs offer no argument that might justify ignoring in this case the bond requirement imposed by the Rule's plain text. Indeed, the operative part of Plaintiffs' argument for dispensing with bond consists of this sentence: "Here, the relief enforces existing duties and bounded modifications to prevent irreparable harm to [M.A.]; no bond is warranted." Doc. 14-1 at 21. That is no argument at all: It is unclear what Plaintiffs mean by "bounded modifications"; that a plaintiff believes that their injunction enforces "existing duties" is to say only that he believes he is right on the merits; and every injunction is premised on the goal of preventing "irreparable harm"—so that dispensing with bond based on these arguments would render Rule 65(c) of no effect whatsoever. Plaintiffs ask the Court to compel Defendant to do things that cost money, and Plaintiffs have offered no good reason to deprive Defendant of the Rule-mandated bond intended to protect Defendant if the compulsion turns out to have been in error.

The Court therefore will require Plaintiffs to post a bond to obtain the benefit of the preliminary injunction they seek. Defendant is required to provide by December 4 an itemized estimate of the costs likely to be incurred in complying with the preliminary injunction set forth below. Plaintiffs may then state their position, and the Court will set the amount of the bond after reviewing the Parties' positions.

### C. Order on Motion for a Preliminary Injunction.

Defendant **SHALL** provide by December 4, 2026, an itemized estimate of the costs likely to incurred in complying with the preliminary injunction set forth below. Plaintiffs **SHALL** state their response by December 11, 2026, providing specific and succinct explanations for any

objections to Defendant's estimate. After the Court reviews the Parties' positions, it will enter an order setting forth the amount of the bond.

Plaintiffs **SHALL** post bond in the amount set by the Court in order to obtain the benefit of the preliminary injunction set forth here. If Plaintiffs do so, the Court will enter a preliminary injunction providing as follows:

- Defendant SHALL provide instruction to M.A. using "ABA methodology, verbal behavior instructions, across all academic and nonacademic settings"; and

- Defendant SHALL provide said instruction with oversight from a qualified Board Certified Behavioral Analyst who shall design, oversee, and supervise M.A.'s school-based ABA program. The BCBA shall provide training to all District personnel responsible for implementing M.A.'s IEP and BIP. Said BCBA SHALL be selected and retained within 14 days of the date of this Order.[7]

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Enforce Stay-put and for Preliminary Injunction (Doc. 14) is **GRANTED IN PART AND DENIED IN PART.**

**SO ORDERED**, this 25th day of November 2026.

*s/Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE

[7] Plaintiffs also seek to impose various additional requirements, such as that they be consulted in selection of a BCBA and that Defendant satisfy various periodic reporting requirements—all with this Court apparently playing some sort of ongoing supervisory role over these requirements. Plaintiffs do nothing to base these requests in substantive law, nor to show that they are necessary to prevent irreparable harm. The Court therefore declines to impose the additional requirements sought by Plaintiffs.